CHAPMAN & DEWEY LUMBER COMPANY

*v.*

TRI-STATE VENEER & PLYWOOD CO., INC.

(*Jackson,* April Term, 1956)

Opinion filed April 1, 1957.

J. E. McCadden and Emmett W. Braden, Memphis, for appellant (complainant).

662

WILS DAVIS and EARL P. DAVIS, Memphis, for appellee (defendant).

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The only question made on this appeal is the amount of damages awarded to Chapman & Dewey Lumber Company for the conversion by Tri-State Veneer & Plywood Company of 175 logs which had been unlawfully cut and removed from lands owned by the plaintiff. The question is whether the measure of damages is the value of the logs at the time they were sold and delivered to Tri-State or the ''stump'' value, that is the value of the trees at the time they were cut by one Carl Cole.

The facts which gave rise to this suit are clearly stated in the Court of Appeals' opinion by Judge Carney, as follows:

"Chapman & Dewey, in 1955, were the owners of the standing timber on a tract of land in Shelby County known as the Humphrey Tract or Bray's Island Tract sometime called Vice-President's Island, the fee simple of which was owned by the City of Memphis, Tennessee. Mr. Florida and Mr. Speck owned approximately 2,000 acres of land located on President's Island in the Mississippi River adjoining the Humphrey Tract. The two tracts were separated when the water was up by means of a slough which often went dry in the summertime. Speck and Florida were in the process of clearing some 700 acres of their tract of land and gave their agents, Robinson and Watts, authority to sell any merchantable logs that might be cut in the process of clearing the land and which otherwise would have been windrowed and destroyed if not sold.

"Carl Cole, aged 21 years, who had been engaged as a logger for several years, made arrangements with Mr. Watts to cut and haul the logs cut from the Speck and Florida land and sell the same to the defendant, Tri-State Veneer & Plywood Company, Inc. Either intentionally or through lack of knowledge as to the precise boundary line between the two tracts the said Carl Cole cut approximately 175 trees from the Humphrey Tract which were the property of Chapman & Dewey Lumber Company and hauled and sold these logs to Tri-State Veneer & Plywood Company, Inc. The number of feet of timber actually owned by Chapman & Dewey and cut and removed by Cole were in dispute.

"Plaintiff below, Chapman & Dewey Lumber Company, proved the value of the timber at the time of its

purchase by the defendant, Tri-State Veneer & Plywood Company, Inc. Neither side introduced any proof to show the actual value of the timber at the time and place the trees were actually felled.

"At the conclusion of the plaintiff's proof the defendant, Tri-State Veneer & Plywood Company, Inc., moved the Court for a directed verdict in favor of the defendant on the grounds that the plaintiff had failed to prove the value of the timber at the time the trees were actually cut. This motion was overruled.

"Again at the conclusion of all the proof the motion was renewed and overruled."

The trial court ruled that the measure of damages was the value of the logs at the time they were sold, which according to the proof amounted to $4,500. The only evidence offered as to value was the value at the time the logs were purchased by Tri-State.

The defendant insisted that the "mild" rule should be applied because there had been no showing that the timber had been maliciously cut. The trial judge was of the opinion that the case of *Godwin v. Taenzer*, 122 Tenn. 101, 119 S.W. 1133, was controlling and that the measure of damages was the market value at the time of their alleged conversion or purchase by Tri-State. He charged the jury accordingly and the jury returned a verdict for the plaintiff based upon the charge of the court.

The defendant moved the court for a new trial which was overruled. An appeal was seasonably prayed and granted to the Court of Appeals. The principal assignment was the alleged error of the court in charging the jury as to the measure of damages. The judgment of the trial court, however, was reversed upon several grounds.

We granted *certiorari,* and the principal issue orally argued by counsel is the error of the trial judge in charging the jury as to the measure of damages. The charge complained of by petitioner is as follows:

"Now, Gentlemen of the Jury, if you find from the greater weight or preponderance of the evidence this theory and contention true, that is to say, if you find from the greater weight or preponderance of the evidence that Cole and/or Dorsey went upon the plaintiff's property, cut timber and sold the logs to the defendant, then your verdict should be in favor of the plaintiff, for the value of the logs which you find that they purchased from either or both of these two men.

\* \* \* \* \* \*

"Gentlemen, should you find in favor of the plaintiff, Chapman & Dewey Lumber Company, then the Court charges you that the measure of damages that the plaintiff would be entitled to would be the market value of the logs at the time the defendant purchased said logs."

It is insisted by petitioner that the statute applied to Carl Cole and Ed Dorsey regardless of whether they knew, at the time of the trespass, the name of the owner of the timber which they were cutting and removing without the owner's consent.

The Sections of the Code which are applicable to this case are 39-4527, 39-4528 and 39-4529, T.C.A., as follows:

39-4527. "It shall be unlawful for any person to cut, haul, remove or sell timber in the form of logs, dye wood, cord wood, hickory blocks, stave bolts, hoop poles, cross ties, shrubbery, or any other kind of tim-

ber from the lands sold to the state for taxes, or other state owned lands, or lands belonging to an individual, firm or corporation, without a written certificate from the owner, giving the name and address of the seller, and the date such timber was sold.''

·39-4528. ''It shall be the duty of any sawmill operator and/or other person purchasing such timber to make diligent inquiry of the seller, as to the land from which said timber has been cut, before purchasing the same, and to obtain from the seller the certificate signed by the owner of such timber, designating such land and location from which such timber was cut, which certificate shall be preserved, by the purchaser of such timber for a period of two (2) years, available for inspection to any person concerned in such timber.''

39-4529. ''Any person, firm or corporation, violating sec. 39-4527 shall be guilty of a felony and on conviction shall be punished by confinement in the penitentiary for not less than one (1) year nor more than three (3) years, and any person, firm or corporation violating sec. 39-4528 shall be guilty of a misdemeanor and shall be punished as provided in sec. 39-4519, and in addition to such punishment, shall be liable to the owner of the land from which such timber was cut and sold for the value of such timber purchased.''

In the Court of Appeals opinion, it is said:

''The plaintiff below introduced the negro logger, Carl Cole, as its witness and he testified that he cut over the line through ignorance and under the mistaken belief that he was still cutting on the lands of Speck and Florida as he was authorized to do.''

■ ·We find the foregoing statement to be true, and the men were not criminally liable. . : : :. : ·ʌ· ·. ..·

■ It was the duty of Tri-State, however, to comply with Code Section 39-4528 before buying logs from Cole and Dorsey. The possession of such certificate, duly signed by Chapman & Dewey, or an authorized agent, was mandatory by the very terms of the statute. The fact that the logs were cut by mistake, and the seller innocent of any wrong, is no defense in a civil action by the owner to recover their value.

■ In the trial court the defendant plead "not guilty" to the declaration and also by special plea insisted that it purchased no longs that were taken from lands belonging to Chapman & Dewey. There was no charge in the declaration that the loggers had committed a criminal trespass, but the charge was that they went upon the lands without authority of the owner. The pleas of the defendant made an issue of their authority.

The trial judge charged the respective theories of the parties and then read to the jury the Code Sections quoted above. He refused to charge a special request of the defendant that the defendant would not be liable if Cole and Dorsey cut the logs by mistake or inadvertence, and that in such circumstances "it" was not necessary for the defendant to have in its possession a certificate signed by the owner of the land."

The Court of Appeals held that since there was no evidence or knowledge of the trespass or bad faith on the part of Tri-State, the "mild" rule as the measure of damages should apply.

In *Holt & Johnson v. Hayes,* 110 Tenn. 42, 73 S.W. 111, the Court held that where timber is purchased prior to any notice of the trespass by the seller the "mild" rule, i.e., its market value in the woods, applies, whereas, if purchased after knowledge of notice of the trespass, the "harsh" rule applies, that is its value when brought to market by the wrongdoer.

In the case of *Godwin v. Taenzer, supra,* there had been a felonious taking of timber from the lands of the complainant. There the "harsh" rule was properly applied.

The cases cited in the brief of counsel, and discussed by the Court of Appeals, were decided several years prior to the enactment of the Code Sections relied on by the petitioner. The statute was passed in 1937. We have every reason to believe that the Legislature intended to make more secure the ownership of timber upon public lands and upon private lands as well. Thus in *State v. Lewis,* 198 Tenn. 91, 94, 278 S.W.2d 81, 82, Mr. Justice Swepston, speaking for the Court says:

"As timber became scarcer and more valuable through the years following 1907, the date of the original Act, the Legislature attempted to strengthen the law in 1925 by Chapter 147, Sections 1 and 2 of the Public Acts of 1925. No doubt the 1937 Act requiring a written certificate, was found to be desirable in order effectively to combat the trespass and theft of timber."

The statute loses its full force and effect if purchasers of timber are allowed to defend against the owner's suit for its value on the ground he had no knowledge of the trespass; or that it is not necessary that the buyer

have a certificate from the owner if the trespassing seller claims that his trespass was a mere inadvertence. The Code Sections herein referred to should be strictly construed in favor of the owner of the timber and against the buyer who fails to comply with the law. In other words, the burden should be upon the buyer to show a certificate from the owner, otherwise the application of the "harsh" rule should apply. Whether or not the buyer has made "diligent inquiry of the seller, as to the land from which said timber has been cut", and has obtained "from the seller the certificate signed by the owner" before purchasing, is an issue of fact for the jury to decide. Code Section 39-4528.

The question naturally arises as to the extent of the inquiry by the "sawmill operator" or "buyer" as to ownership of the timber, and the character and form of the certificate from the owner, as required by Code Section 39-4528. Since there is no answer in the statute, we think the rule of reason would apply. The statute is a warning to any purchaser of timber to protect himself by making such "diligent inquiry" as a prudent person would be expected to make under the circumstances. This would also be true as to the character and form of the owner's certificate of title to the property.

The judgment of the Court of Appeals is reversed, and that of the trial court is affirmed.

TOMLINSON, BURNETT and SWEPSTON, JUSTICES, concur.

PREWITT, JUSTICE, not participating.